EMORY H. PRICE, as Supervisor of Registration for Duval County, v. STATE, *Ex Rel.* M. B. HERLONG, *et al.*

159 So. 11.

Division B.

Opinion Filed January 24, 1935.

*John A. Rush,* for Plaintiff in Error;

*Austin Miller and Emmet Safay,* for Defendants in Error.

BUFORD, J.—The writ of error in this case brings for review the judgment awarding peremptory writ of mandamus against the plaintiff in error requiring him to "permit the petitioners, M. B. Herlong, Thomas C. Imeson, Ernest E. Anders, St. Elmo W. Acosta and Fred M. Valz, as the City Commissioners of the City of Jacksonville, a municipal corporation, to have free access to the registration lists of the County of Duval with authority to make, or have made, copies of such registration lists, as far as they include the election districts within the City of Jacksonville; Provided, however, that access to such registration lists and the making of copies thereof shall be confined to such reasonable hours as you, the said Emory H. Price, as Supervisor of Registration for Duval County, Florida, shall designate, said lists at all times to be within the custody and control of the respondent."

The plaintiff in error contends:

"(1.)   The Board of Election Commissioners created by Chapter 4498, Acts of 1895, was abolished by Chapter 4872, Laws of Florida, 1899, and that the authority of such election Commissioners did not vest in the City Commission by reason of Chapter 7659, Acts of 1917.

(2.)   That the laws upon which appellees base their petition for writ of mandamus are special and local laws, and therefore cannot regulate the duties of a county official, be-

cause any attempt to do so would be in direct conflict with the provisions of Section 20, Article III of the Constitution of the State of Florida.

(3.) That the General Laws of the State of Florida specifically forbid the doing of the act sought to be accomplished by the Writ of Mandamus."

Involved in determination of the questions presented there are three Special Acts of the Legislature and one section of the General Laws. The legislative Acts involved are Chapter 4498, Acts of 1895, Chapter 4872, Acts of 1899 and Chapter 7659, Acts of 1917.

Section 6 of Chapter 4498, Acts of 1895, was as follows:

"The board of election commissioners shall make all necessary preparations and arrangements for holding all city elections and shall declare the result thereof. They shall appoint a registration officer prior to each city election who shall register all persons applying to him for that purpose who shall have become of age since the last general State election and are otherwise qualified as electors under the provisions of this Act. Such registration officer shall open his office at some convenient place in said city fifteen days before such city election and shall keep such office open every day from 9 o'clock A. M. to 12 M., and from 2 P. M. to 5 o'clock P. M. for five days. Each person applying to register shall take the following oath to be administered by the registration officer; 'I do solemnly swear that I am a *bona fide* resident of the City of Jacksonville and possess all the qualifications of an elector of said city; that I reached the age of twenty-one years since the last general State election.' Any person taking such oath who shall swear falsely shall be guilty of perjury. The name of each person so registered shall be entered in a book prepared for that purpose, giving also under proper headings, his age,

color, occupation and the location of his residence, the list of each election district being kept separate. Immediately upon closing the registration, such books shall be turned over to the election commissioners. Said election commissioners shall have free access to the registration lists of the County of Duval, with authority to make, or to have made, copies of the same, so far as they include the election districts within said city; and from the same, together with the registration of the city registration officers, shall prepare a list in alphabetical order by election districts of the qualified electors' authorized to vote at such city election, omitting therefrom the names of all persons who have died or removed from said city or are otherwise disqualified to vote, and shall publish said list one day in one of the newspapers of said city at least six days before the day of the city election, and with such publication give notice of a certain place within said city, four days before such election, where they will meet to restore any name or names to such registration lists which may have been improperly stricken therefrom; and at such time and place shall meet for that purpose, and shall restore to such list any name or names shown to have been improperly stricken or omitted from such registration list. In case the name of an elector appears in an election district in which he does not reside, the said election commissioners shall upon application transfer the same to the proper election district. The registration so revised and completed shall constitute the list of registered voters entitled to vote at such city election."

Section 1 of Chapter 4872, Acts of 1899, provided in part as follows: "From and after the passage and approval by the Governor of this Act the Board of Election Commissioners of the City of Jacksonville as now existing shall be abolished.

"The Board of Bond Trustees of the City of Jacksonville shall have exclusive power to appoint, subject to approval by the affirmative vote of two-thirds of the members of the City Council, all officers not elected by the electors and all members of the police force; Provided, That officers properly belonging to the Department of the Board of Public Works shall be elected by the Board of Public Works. Three persons selected by the Board of Bond Trustees from among the members of the said Board shall be designated to perform all the duties of Election Commissioners in all matters relating to municipal elections."

Other parts of that Act are not involved in this case.

Chapter 7659, Acts of 1917, was:

"An Act Affecting the Government of the City of Jacksonville; Abolishing Certain Offices and Boards, Creating a City Commission and Prescribing its Powers and Duties; Providing for and Prescribing the Powers and Duties of the Trustees of the Jacksonville Free Public Library; Creating a Board of Charities and Prescribing its Powers and Duties, and Its Relation to the Board of County Commissioners; Providing Other Officers and Prescribing Their Powers and Duties; and Conferring Additional Jurisdiction, Powers and Duties on Said City."

Section 8 of that Act provided:

"Sec. 8.   Certain Boards Abolished—Duties of Commissioners.—On the first Tuesday in July, A. D. 1917, or as soon thereafter as said Commissioners shall be elected and qualified, the Board of Trustees for the Waterworks and Improvements Bonds of the City of Jacksonville, otherwise known as the Bond Trustees, including the Election Commissioners, the Board of Health, and the Committee on Public Works, and the Board of Port Commissioners of the City of Jacksonville, and each and every member and com-

mittee of said boards, shall be and the same are hereby, at such time, abolished, and all of the powers and duties vested in each and every of said boards and committees and the members thereof shall be transferred to, vested in, and imposed upon said City Commission; Provided, However, that all officers, heads of departments, and employees of said boards and committees so abolished shall continue to hold and retain their offices and positions at the same rate of compensation as at the time prescribed until their successors are elected by or appointed by the City Commission."

And so it is we find that the Legislature by the several enactments has vested the power in the City Commissioners of the City of Jacksonville which was vested in the Election Commissioners of the City of Jacksonville under the provisions of Section 1 of Chapter 4498, Special Acts of 1895.

The record shows that the Supervisor of Registration of Duval County refused to permit the City Commission of the City of Jacksonville to make, or have made, copies of registration lists as far as they include the election districts within the City of Jacksonvile and that thereupon the Commission filed petition for mandamus. It is contended that if the Special Acts of the Legislature purport to give this authority to the City Commission that the legislative Acts are invalid because they are Special or local laws in conflict with Section 20, Article III of the Constitution of Florida relating to the jurisdiction and duties of a county officer, to-wit the Supervisor of Registration. We do not think that contention is tenable because the Special Acts do not regulate the jurisdiction and duties of the County Supervisor of Registration but deal with the powers and duties of the municipal officers and with their access to county registration lists, which are in themselves public records.

It is further contended that Section 245 R. G. S., 298 C. G. L., and Section 322 R. G. S., 379 C. G. L., prohibits the Supervisor of Registration to allow the making of the lists here sought to be made. We do not think this position is tenable. The language relied on in Section 245 R. G. S., 298 C. G. L., is "The Supervisor of Registration shall not be authorized or required prior to any election to furnish copies of the registration books of his county or to allow indiscriminate handling or examination thereof by anyone, but he shall at all times allow any elector to examine as to the status of his own name upon the books of the election district to which such elector may belong."

Section 322 R. G. S., 379 C. G. L., is as follows:

"The said registers shall be public records. Every citizen shall be allowed to examine the general county register and each of the precinct registers, while they are in the custody of the supervisor of registration, but shall not be allowed to make copies or extracts therefrom. The supervisor of registration shall furnish copies of the names, occupations and residences of any electors upon payment to him of reasonable compensation therefor, not exceeding the customary fees for copying papers in the office of the clerk of the circuit court, but shall not furnish in writing any other information contained in said registration books."

Now, this section applies to citizens in their individual capacity as such. It was evidently intended to preclude citizens from indiscriminately making lists of registration books for sale to interested parties and for the purpose of giving to the Supervisor of Registration the assurance that when such lists were made for individual use the Supervisor of Registration, whose pay is meager in most counties, would get the compensation allowable under the law for making up such lists. But here we are not concerned

with a case of that sort. In this case the Legislature has created a municipality and looking to the economic administration of the affairs of such municipality has provided that the City Commission in the performance of its duties with reference to elections may have copies made of the County Registration lists insofar as they apply to the precincts or election districts within the municipality. They do not procure the lists as citizens but as officials of the municipality specifically authorized by law to procure such lists from the public records of the county. This provision of the statute in nowise interferes with the operation of the general law prohibiting the making up of lists by citizens. Therefore, we must hold that the contention of the plaintiff in error is not well founded.

In the case of State *ex rel.* v. Dillon, 32 Fla. 545, 14 Sou. 383, the principles of law applicable to charter provisions of this character were discussed by Mr. Justice MABRY at great length and while the particular question involved here was not presented in that case, we think the reasoning which was applied in that case fully sustains the conclusion which we have reached.

The judgment should be affirmed. It is so ordered.

Affirmed.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.